Opinion issued August 9, 2022



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00121-CV

————————————

**HILLEGEIST FAMILY ENTERPRISES, LLP, BRUCE HILLEGEIST, AND BRIAN HILLEGEIST, Appellants**

**V.**

**BLAKE HILLEGEIST, Appellee**

On Appeal from the 80th District Court
Harris County, Texas
Trial Court Case No. 2017-40148

# O P I N I O N

Appellants Brian Hillegeist; Bruce Hillegeist; and Hillegeist Family Enterprises, LLP challenge the trial court's judgment awarding attorney's fees to their brother Blake Hillegeist. Blake, in his cross-appeal, contends that the trial court

erred in awarding him attorney's fees only from the Hillegeist Family Enterprises partnership instead of from all the appellants and in issuing an order regarding winding up of the partnership. We affirm in part and reverse and remand in part.

## BACKGROUND

Hillegeist Family Enterprises, LLP ("HFE") is a general partnership that owns a strip mall. Three brothers—Blake, Brian, and Bruce—are each partners in HFE; the fourth partner is Hillegeist Family Partnership, Ltd., another family-owned partnership. Blake was the managing partner of the strip mall enterprise, but Brian and Bruce ("the Brothers") began to suspect Blake of mismanaging the partnership money. The Brothers and HFE sued Blake, asserting claims for breach of fiduciary duty, theft under the Texas Theft Liability Act (TTLA), and money had and received. Blake responded by asserting multiple counterclaims against the Brothers.

While the suit was pending, the Brothers filed an Application for Order Not to Interfere with Winding Up, asking the trial court to order Blake not to interfere with winding up the partnership, and later the Brothers filed an Amended Application for Order Regarding Winding Up, asking the trial court to supervise the partnership's winding up and to appoint Bruce to carry out the winding up. The Brothers claimed in the amended application that HFE held a partnership meeting and that the Brothers voted to voluntarily wind up the partnership. Blake voted against winding up, but the Brothers claimed that they held a majority-in-interest of

2

the partnership because they also held the majority of Hillegeist Partnership Enterprises, Ltd., the fourth partner of HFE. The trial court granted their application to supervise the voluntary winding up of the partnership and appointed Bruce to carry out the winding up.

At the pretrial conference, the trial court granted the Brothers' motion for summary judgment on almost all of Blake's counterclaims. The claims tried to the jury were the Brothers' and HFE's claims for breach of fiduciary duty and theft under the TTLA, and Blake's claim for slander. The jury found no liability and awarded no damages.

Blake, as the prevailing party under the TTLA, moved for an award of attorney's fees from the Brothers and HFE, and the issue was tried to the bench. The trial court entered a final judgment, but at the request of the parties, modified that judgment. The trial court's second amended final judgment incorporated the trial court's interlocutory order regarding winding up and awarded Blake $272,987 in attorney's fees against HFE, and it is from this judgment that both sides now appeal.

**DISCUSSION**

The Brothers and HFE[1] raise two issues on appeal: (1) the trial court erred in awarding attorney's fees to Blake because he did not properly plead a request for

---

[1] Although HFE is a party to this appeal, for the remainder of this opinion we will simply refer to the Brothers, as they are asserting arguments on behalf of HFE and themselves.

3

attorney's fees; and (2) if the attorney's fees award was nonetheless warranted, Blake did not meet his burden to prove the attorney's fees were reasonable because he did not adequately segregate recoverable fees from unrecoverable fees. Blake also raises two issues on appeal: (1) the trial court erred in awarding him attorney's fees against HFE alone and not against the Brothers as well; and (2) the trial court erred in granting the Brothers' Amended Application for Order Regarding Winding Up and incorporating that order into the final judgment when the Brothers did not plead or prove a cause of action for judicial winding up.

## A.     Attorney's fees awarded to Blake

In the Brothers' first issue, they contend that the trial court erred in awarding attorney's fees to Blake because he never pleaded a request for attorney's fees from HFE under the TTLA, so Blake did not provide fair notice of his claim for attorney's fees and was not entitled to recover them. Blake, in response, argues that he specifically pleaded a request for attorney's fees under the TTLA in his original and first amended answer.

### 1.     *Applicable law*

In Texas, generally each party must pay its own attorney's fees unless a statute or contract authorizes fee-shifting. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 483–84 (Tex. 2019). The TTLA is one such statute. The TTLA provides, "Each person who prevails in a suit under this chapter shall be

4

awarded court costs and reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM. CODE § 134.005(b). A defendant who successfully defeats a claim against him under the TTLA can be a prevailing party. *Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 706 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Because a trial court's judgment must conform to the pleadings, a party seeking attorney's fees must plead for them, specifying the legal standard under which the fees are sought. *See Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 658–59 (Tex. 2009) (holding party waived right to recover attorney's fees under contractual provision by pleading for attorney's fees only under statutory provision); *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 885 (Tex. App.—Dallas 2009, no pet.) (stating general prayer for relief like "such other and further relief at law or in equity" does not support attorney's fees award). In Texas, a pleading need only provide "fair notice" of a claim, which is satisfied if the "opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). Where, as here, no special exceptions have been sustained, we construe pleadings liberally in favor of the pleading party. *Id.* at 897.

We review a trial court's award of attorney's fees for an abuse of discretion. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012).

## 2. *Analysis*

The Brothers contend that in their original petition, HFE, and not the Brothers individually, asserted a TTLA claim against Blake, but Blake did not specifically request attorney's fees from HFE in his answer or counterclaims. In support of their argument, the Brothers cite cases stating that a general prayer for relief does not support an award of attorney's fees. *See Kissman v. Bendix Home Sys., Inc.*, 587 S.W.2d 675, 677 (Tex. 1979) ("The prayer for general relief is of no assistance [in giving fair notice of a claim] because a prayer must be consistent with the facts stated as a basis for relief."); *Alan Reuber Chevrolet*, 287 S.W.3d at 884 ("A general prayer for relief will not support an award of attorney's fees because it is a request for affirmative relief that must be supported by the pleadings.").

We disagree that Blake only stated a general prayer for relief in his answers. Blake's first amended answer, his live pleading, stated:

> Defendant Blake Hillegeist respectfully prays that upon final trial of this matter, the Court enter judgment that Plaintiffs take nothing on all of their claims and causes of action and that Court award Defendant his attorney's fees and costs in defending this action, pursuant to TEX. CIV. PRAC. & REM. CODE §§ 38.001 and 134.005(b) [the TTLA].

Blake has done more than state a general prayer for relief; he has specified the legal standard under which he sought attorney's fees. *See Intercontinental Grp. P'ship*, 295 S.W.3d at 658–59; *Alan Reuber Chevrolet*, 287 S.W.3d at 885. He specifically requested attorney's fees under the TTLA. *See* TEX. CIV. PRAC. & REM. CODE

6

§ 134.005(b) (mandating attorney's fees for prevailing party under TTLA). Although Blake did not name the party from which he sought attorney's fees, we are to construe his pleadings liberally, *see Horizon/CMS Healthcare*, 34 S.W.3d at 897, and it is not unreasonable to construe his answer as seeking attorney's fees under the TTLA from the party or parties asserting the TTLA claim against him, which the Brothers contend has always been HFE alone. Thus, Blake sufficiently pleaded a request for attorney's fees under the TTLA to give his opponents fair notice and enable the trial court to award attorney's fees to Blake. *See id.* at 896.

The Brothers argue that Blake did not affirmatively seek attorney's fees under the TTLA from HFE in his counterclaims; he only requested attorney's fees from the Brothers, and that, reading his pleadings together, Blake never requested attorney's fees from HFE. But as we have already discussed, Blake's first amended answer sufficiently pleaded a request for attorney's fees to give his opponents fair notice of the claim.

Blake's first amended answer stated that he sought the recovery of attorney's fees under the TTLA, and his answer may be construed as seeking attorney's fees from HFE, which, according to the Brothers, was the only party asserting a TTLA claim against Blake. Blake sufficiently pleaded a request for attorney's fees under the TTLA such that the trial court did not abuse its discretion in awarding attorney's fees to Blake. The Brothers' first point of error is overruled.

**B.      Attorney's fees against HFE, not Brothers**

In Blake's first point of error, he contends the trial court correctly awarded him attorney's fees against HFE, but the trial court should also have awarded him attorney's fees against the Brothers individually as well. He argues that all three plaintiffs—the two Brothers and HFE—asserted TTLA claims against him, that the Brothers never nonsuited their TTLA claims, and that he was the prevailing party on the TTLA claims, so he was entitled to attorney's fees from all three plaintiffs. The Brothers contend that they never asserted a TTLA claim against Blake and that only HFE asserted the TTLA claim, and so the trial court was correct in awarding Blake attorney's fees only against HFE.

*1.      Applicable law*

In Texas, a pleading need only provide "fair notice" of a claim, which is satisfied if the "opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Horizon/CMS Healthcare*, 34 S.W.3d at 896. Where, as here, no special exceptions have been sustained, we construe pleadings liberally in favor of the pleading party. *Id.* at 897.

We review a trial court's award of attorney's fees for an abuse of discretion. *See El Apple I*, 370 S.W.3d at 761.

## 2. *Analysis*

The parties disagree about which plaintiffs asserted the TTLA claim against Blake. The petition itself is ambiguous, and both sides point to specific language in the petition that supports their position. The petition, filed by the Brothers and HFE, alleges:

> Defendant Blake committed theft when he diverted money from the Partnership funds with the intent to deprive the Partnership of its property and spent the money on non-partnership expenses. In accordance with Chapter 134 of the Texas Civil Practice and Remedies Code [the TTLA] and the Texas Penal Code § 31.03, Plaintiffs are entitled to recover from Defendant Blake their actual, additional, and exemplary damages, costs of court, attorneys' fees, and pre- and post-judgment interest.

The Brothers contend that in this paragraph, only HFE was asserting the TTLA claim against Blake because the paragraph alleges an intent to deprive the *partnership* of its property, not the Brothers individually. Blake contends that HFE and also the Brothers individually were asserting TTLA claims because the paragraph states the *plaintiffs* were entitled to recover damages, and the plaintiffs were the Brothers and HFE. Construing this paragraph liberally in favor of the pleaders' position, *see Horizon/CMS Healthcare*, 34 S.W.3d at 897, we may conclude only HFE asserted the TTLA claim against Blake. This construction is supported by at least two other instances in the record.

First, when Blake moved for summary judgment on the Brothers' TTLA claims, the Brothers responded by arguing that they did not assert TTLA claims

9

against Blake; only HFE did. They asked the trial court to deny Blake's summary-judgment motion because he moved for summary judgment under the TTLA on claims that had not been asserted. Blake also points out that the Brothers never nonsuited their TTLA claims, which supports the Brothers' position that they never asserted TTLA claims.

Second, the Brothers, individually, did not submit any TTLA claims to the jury. The only jury questions relating to theft asked specifically about HFE's property: "Did Blake commit theft of HFE's property with respect to HFE expenditures on the Cedar Lane Property?"; "Did Blake commit theft of HFE's property with respect to HFE expenditures on the Telge Road Property?"; and "Did Blake commit theft of HFE's property with respect to HFE expenditures other than those that pertain to the Cedar Lane or Telge Road Properties?"

Construing the original petition liberally in favor of the Brothers' position, and considering that the Brothers have consistently argued they did not assert TTLA claims individually and that they did not submit individual TTLA claims to the jury, we find no error in the trial court's judgment awarding Blake attorney's fees only against HFE and not against the Brothers individually. Blake's first point of error is overruled.

**C. Amount of attorney's fees**

In the Brothers' second point of error, they argue the trial court erred in awarding attorney's fees to Blake because he did not meet his burden to prove the amount of recoverable fees.

*1. Applicable law*

Again, each party must pay its own attorney's fees unless a statute or contract authorizes fee-shifting. *Rohrmoos Venture*, 578 S.W.3d at 483–84. When fee-shifting is authorized, the factfinder must determine the reasonable hours worked multiplied by a reasonable hourly rate. *Id.* at 498. We presume this base lodestar calculation is the reasonable and necessary amount of attorney's fees to be shifted to the opposing party, so long as the amount is supported by sufficient evidence. *Id.* at 499. Sufficient evidence includes evidence of "(1) particular services performed; (2) who performed those services; (3) approximately when the services were performed; (4) the reasonable amount of time required to perform the services; and (5) the reasonable hourly rate for each person performing such services." *Id.* at 498.

The fee claimant bears the burden of proving the reasonableness of the amount awarded. *El Apple I*, 370 S.W.3d at 762–64. If the opposing party wants to reduce the amount of attorney's fees awarded, that party must provide specific evidence to overcome the presumption of reasonableness. *Rohrmoos Venture*, 578 S.W.3d at 501.

Because attorney's fees are recoverable only when provided for by statute or the parties' contract, a fee claimant must segregate attorney's fees that are recoverable from those that are not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310, 314 (Tex. 2006); *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017). When "discrete legal services" that advance both a recoverable and unrecoverable claim are intertwined, they need not be segregated. *Tony Gullo Motors*, 212 S.W.3d at 313–14. The fee claimant bears the burden of proving segregation is not required. *CA Partners v. Spears*, 274 S.W.3d 51, 82 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

When segregation is required, attorneys do not have to keep separate time records for each claim. *Tony Gullo Motors*, 212 S.W.3d at 314. Rather, an attorney's opinion that a certain percentage of the total time was spent on the claim for which fees are recoverable will suffice. *Id.*

The need to segregate attorney's fees is a question of law, and the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Id.* at 312–13; *CA Partners*, 274 S.W.3d at 81. When a fee claimant fails to properly segregate attorney's fees, we may remand the issue to the trial court for reconsideration. *Kinsel*, 526 S.W.3d at 428; *Tony Gullo Motors*, 212 S.W.3d at 314.

12

## 2.  *Analysis*

The parties agree that only one claim in this case allows for the recovery of attorney's fees: the TTLA claim. *See* TEX. CIV. PRAC. & REM. CODE § 134.005(b) ("Each person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees."). The fees for the remaining claims, both the Brothers' claims against Blake and Blake's counterclaims against the Brothers, are not recoverable. The parties also agree that Blake's attorney's fees attributable to the TTLA claim should have been segregated from fees attributable to the other claims, and that Blake's attorney, at least to some extent, did so. The Brothers, however, argue that Blake's attorney did not adequately segregate the recoverable and unrecoverable fees; Blake argues that his attorney segregated those fees that were capable of being segregated, but the rest were "inextricably intertwined" and not capable of segregation.

In his second amended declaration, Brian Kilpatrick, Blake's attorney, described the claims against which he defended Blake and the legal services he and his associates provided during that representation, including reviewing "voluminous documents," drafting Blake's answers and discovery requests, answering discovery requests with more than 12,000 pages of documents and financial records, taking four depositions, and preparing for and representing Blake during trial. Kilpatrick asserted that Blake had incurred attorney's fees in the amount of $272,987. He

13

explained, "[t]his amount does not include any attorney's fees incurred solely in connection with Blake's pursuit of his counterclaims." But, Kilpatrick explained, all of the claims that the Brothers had asserted against Blake arose out of the same transactions and were "so interrelated that the defense of such claims in this case entailed proof or denial of essentially the same facts." Thus, Kilpatrick stated, in his opinion, Blake's fees were "intertwined to the point of being inseparable and, therefore, [subject to] the 'inextricably intertwined' exception to the duty to segregate attorney fees." *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991) (explaining former exception to duty to segregate attorney's fees for claims arising out of same transaction that are "intertwined to the point of being inseparable"), *holding modified by Tony Gullo Motors*, 212 S.W.3d at 314. Kilpatrick noted that Blake's actual incurred attorney's fees totaled more than $400,000, but Blake was only seeking to recover a portion of that amount. Kilpatrick also stated the hourly rates he and his associates charged and his opinion that the rates were reasonable.

Kilpatrick attached to his declaration a billing spreadsheet detailing dates, hours spent, hourly rate, and a narrative description of the legal services performed; for instance, on May 31, 2017, he spent 0.40 hours at a rate of $350 per hour on a "[t]elephone conference with B. Hillegeist regarding dispute with siblings/partners concerning shopping center." After the Brothers objected, Kilpatrick added a column

14

to the spreadsheet entitled "Notes on segregation of fees" and reduced the amount of time for certain entries; for example, the August 15, 2017 entry of "[d]rafted and filed counterclaim" was "[r]educed to 0" hours, and that entry was not included in the total amount of fees. Thus, we first note that Blake has provided sufficient evidence to support a presumption of reasonable and necessary attorney's fees. *See Rohrmoos Venture*, 578 S.W.3d at 499.

However, the Brothers argue the amount awarded was not reasonable because, although Kilpatrick attempted to segregate unrecoverable fees, he did not segregate all fees that were unrecoverable. As they did in the trial court, the Brothers identify numerous entries in the billing spreadsheet that describe likely unrecoverable fees even after Kilpatrick claimed to have removed unrecoverable fees. For instance, the Brothers identified a fee incurred on October 13, 2017, for $425 with the following description: "Reviewed correspondence from Brian Hillegeist's counsel regarding request for information about defamatory statements. Drafted objection to same. Drafted correspondence to client regarding the same." Yet any fees incurred in Blake's defamation claim against Brian were unrecoverable and not intertwined with the TTLA claim. This unrecoverable fee should have been segregated from the recoverable fees. While one unrecoverable fee could have been a mistake, the list goes on: the Brothers identify many examples of fees included in the billing spreadsheet that either (1) only refer to claims for which fees were unrecoverable,

15

such as the defamation claim; or (2) refer to matters that likely involved both recoverable and unrecoverable fees with no attempt to reduce the total fee. As an example of the latter, Blake conducted discovery for both his defense of the TTLA claim and also his counterclaims, but the billing spreadsheet lists fees for discovery that were not segregated or reduced by a percentage:

- "Draft written discovery requests to be propounded on Plaintiff Bruce Hillegeist. Draft written discovery requests to be propounded on the Plaintiff partnership."

- "Review and finalize the written discovery requests to be served on Bruce Hillegeist and Hillegeist Family Enterprises, LLP."

- "Finalize First Requests for Admission, Requests for Production, and First Set of Interrogatories to be propounded on Plaintiff's [sic] Bruce Hillegeist and the partnership."

- "Revise discovery requests to be served on Plaintiffs."

Blake argues that he was not required to further segregate his fees because the unrecoverable fees that remained, like the fees for discovery listed above, were "inextricably intertwined" with legal services advancing both recoverable and unrecoverable claims or defenses. But Blake's argument relies on an outdated explanation of the "inextricably intertwined" exception. In both the trial court and on appeal, Blake relied on *Air Routing International Corp. (Canada) v. Britannia Airways, Ltd.*, arguing that, like the defendant in that case, his claims "ar[o]se out of the same transaction" and were "so interrelated that their prosecution or defense entail[ed] proof or denial of essentially the same facts" so as to be "inextricably

16

intertwined." 150 S.W.3d 682, 693 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Sterling*, 822 S.W.2d at 11–12).

However, the Supreme Court has since modified the holding in *Sterling*, on which *Britannia Airways* relied, explaining that "[i]ntertwined facts do not make [unrecoverable] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Tony Gullo Motors*, 212 S.W.3d at 313–14. "To the extent *Sterling* suggested that a common set of underlying facts necessarily made all claims arising therefrom 'inseparable' and all legal fees recoverable, it went too far," the Court explained. *Id.* at 313.

Kilpatrick's declaration relied on a common set of underlying facts to argue that most of the legal fees were recoverable. But even when different claims are dependent on the same set of facts or circumstances, "that does not mean they all require[] the same research, discovery, proof, or legal expertise." *Id.* at 313. Still, "many if not most legal fees in such cases cannot and need not be precisely allocated to one claim or the other." *Id.* In these circumstances, an opinion stating a certain percentage of the billed time would have been necessary even if there had been no unrecoverable claims would suffice. *Id.* at 314.

Here, Blake's attorney agreed that some fees were unrecoverable and needed to be segregated, yet he did not give an opinion about a percentage of the legal

17

services he provided that would have been necessary even without the unrecoverable fees. The Brothers identified fees that likely should have been reduced by a certain percentage. While giving a percentage may not be the only method that would suffice to segregate attorney's fees, it is a method the Supreme Court has expressly approved. *See id.* Blake's method here—reducing incurred fees by select units of time for unrecoverable fees—may not always be insufficient, but based on the Brothers' identification of unrecoverable fees that remained despite Kilpatrick's attempt to reduce some of the fees, we conclude the Brothers have met their burden to provide specific evidence overcoming the presumptive reasonableness of Kilpatrick's base lodestar figure. *See Rohrmoos Venture*, 578 S.W.3d at 501.

Further, Blake's final request for attorney's fees was for $272,987 out of more than $400,000 actually incurred, or roughly 68% of the fees actually incurred. The Brothers' attorney stated in his affidavit that, based on his experience, he would expect 15% of the attorney's fees Blake incurred to relate to defending against the TTLA claim for which fees were recoverable; the other 85% of fees were likely attributable to Blake's defense of the other three claims asserted against him as well as Blake's 17 counterclaims and 14 affirmative defenses, none of which related to the claims under the TTLA or were recoverable. Out of 21 causes of action in the case, only one was a claim for which attorney's fees were recoverable, yet Blake sought to recover about 68% of the attorney's fees he incurred. The significant

18

difference between the expected amount of recoverable fees and the amount actually awarded to Blake supports the Brothers' position that the amount awarded to Blake was not reasonable.

Blake's attorney provided a spreadsheet indicating the hours he and his firm worked on the case and their hourly rates; he thus met his initial burden of providing sufficient evidence to support a presumably reasonable amount of attorney's fees that could be shifted to the opposing party. *See id.* at 499. But the Brothers met their burden of providing specific evidence to overcome the presumptive reasonableness of that amount of attorney's fees: they identified specific unrecoverable fees that had not been segregated or reduced, and they provided affidavit testimony identifying a percentage of time that could reasonably be attributable to the recoverable fees, 15%, that significantly differed from the percentage actually recovered, 68%. *See id.* at 501. Still, Blake has provided at least some evidence of the amount of attorney's fees he should be awarded. *Tony Gullo Motors*, 212 S.W.3d at 314 ("Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be."). Therefore, we remand this issue to the trial court for a redetermination of the amount of reasonable and necessary attorney's fees to be awarded to Blake. *See id.* (remanding issue of attorney's fees that should have been segregated to trial court).

The Brothers' second point of error is sustained.

**D. Winding up order**

In Blake's second point of error, he argues the trial court erred in ordering an involuntary winding up of the partnership because that is a cause of action the Brothers did not plead or prove. The Brothers argue in response that they did not seek an involuntary judicial winding up order but rather court supervision of a voluntary winding up, which the trial court has broad discretion to issue.

*1. Applicable law*

The winding up of a partnership is the process of winding up the business and affairs of the partnership; when winding up is completed, the partnership is terminated. TEX. BUS. ORGS. CODE §§ 11.001(8), 152.701. Several events may trigger a required winding up of the partnership, including a voluntary decision to wind up the partnership or a court order requiring the winding up of the partnership. *Id.* § 11.051(2), (5).

Section 11.314 of the Business Organizations Code permits a district court to order the involuntary winding up and termination of a partnership, on application by an owner of the partnership, "if the court determines that: (1) the economic purpose of the [partnership] is likely to be unreasonably frustrated; (2) another owner has engaged in conduct relating to the [partnership]'s business that makes it not reasonably practicable to carry on the business with that owner; or (3) it is not reasonably practicable to carry on the [partnership]'s business in conformity with its

20

governing documents." *Id.* § 11.314. A court may also, on application of the partnership or an owner of the partnership: "(1) supervise the winding up of the [partnership]; (2) appoint a person to carry out the winding up of the [partnership]; and (3) make any other order, direction, or inquiry that the circumstances may require." *Id.* § 11.054.

### 2. *Analysis*

Blake argues the trial court erred in ordering the involuntary winding up of the partnership without proper pleadings and proof to support the cause of action. He argues the trial court should not have ordered the involuntary winding up without at least a summary-judgment proceeding because a trial court's determination under Section 11.314 is subject to the normal standards of pleading and proof, which the Brothers failed to meet. They did not plead a cause of action for involuntary winding up, did not file a summary-judgment motion for involuntary winding up, and did not present formal evidence proving their entitlement to an order of involuntary winding up. Thus, Blake argues, the trial court erred in entering the order regarding winding up.

The Brothers, however, argue that the trial court did not order an involuntary winding up under Section 11.314. They argue that the partnership, after voting to voluntarily wind up, applied for court supervision of the winding up under Section 11.054 of the Business Organizations Code, which does not require a summary-

21

judgment level of proof. *See id.* § 11.054 ("[A] court may . . . supervise the winding up of the [partnership]."). [2] The Brothers provided uncontroverted affidavits stating the partners held a meeting, and a majority-in-interest voted to wind up the partnership. *See id.* § 11.057(a) ("[A] voluntary decision to wind up a domestic general partnership . . . requires the express will of a majority-in-interest of the partners who have not assigned their interests."). [3] The Brothers moved for the trial court's supervision of this voluntary winding up.

---

[2]   We have found no caselaw detailing the standard of proof required for a court to enter an order under Section 11.054 of the Business Organizations Code. The Brothers suggest we review such an order for abuse of discretion and only reverse if the trial court acted arbitrarily, unreasonably, or without reference to guiding principles. But we need not answer that question in this case because Blake has not challenged the trial court's authority to enter a supervisory order under Section 11.054; he has only argued that there was insufficient pleading and proof to support an order under Section 11.314.

[3]   Although each brother holds a 25% interest in the partnership, the Brothers claimed a majority-in-interest vote because they controlled Hillegeist Partnership Enterprises, Ltd., the fourth partner. In the alternative, the Brothers asserted that even if Hillegeist Partnership Enterprises, Ltd., was not the fourth partner, and the fourth partner was—as Blake argued—their mother Arleah who had previously transferred her interest in HFE to Hillegeist Partnership Enterprises, Ltd., the vote to wind up the partnership was still made by a majority-in-interest of the partners because Section 11.057(a) of the Texas Business Organizations Code authorizes a voluntary decision to wind up a partnership by the "express will of a majority-in-interest of the partners *who have not assigned their interests*." TEX. BUS. ORGS. CODE § 11.057(a) (emphasis added). Blake did not challenge the facts that the partnership held a meeting, that the Brothers voted to wind up the partnership, or that Arleah had transferred her interest in HFE, although he disputed the scope of the transfer of her interest.

22

The trial court's order, which was incorporated into the final judgment, did not make any determination under Section 11.314 and instead stated that, pursuant to its supervisory authority under Sections 11.054 and 152.702 of the Texas Business Organizations Code, the court was appointing Bruce, one of the Brothers, as the person to carry out the winding up of the partnership. The trial court also "confirmed" facts the Brothers stated in their uncontroverted affidavits: the vote by which the Brothers elected to wind up the partnership was a valid action of the partnership, and Bruce, as the person appointed to carry out the winding up of the partnership, was entitled to receive all information necessary to effectuate the winding up and termination of the partnership. Blake did not offer evidence to controvert those facts.

Regardless of whether Blake is correct that an order under Section 11.314 requires formal pleading and proof,[4] the trial court did not make a determination or order involuntary winding up under Section 11.314. Brian and Bruce did not

---

[4] Blake has cited no authority explicitly stating so, nor have we found any, but our review of the caselaw shows that a determination under Section 11.314 is usually made following the normal standards of pleading and proof. *E.g.*, *Travis v. Travis*, No. 09-20-00116-CV, 2022 WL 1177611, at *2, *5 (Tex. App.—Beaumont Apr. 21, 2022, no pet.) (mem. op.) (plaintiff filed claim to dissolve partnership, and moved for summary judgment, under Section 11.314); *Shannon Med. Ctr. v. Triad Holdings III, L.L.C.*, 601 S.W.3d 904, 909, 917 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (plaintiff filed "suit for judicial dissolution" under Section 11.314 and submitted question of dissolution to jury). We have found no caselaw suggesting that an order under Section 11.054 is subject to the same standards.

23

formally plead or prove a cause of action under Section 11.314, and the trial court did not make a determination under Section 11.314, but formal compliance with Section 11.314 in this case was not necessary because the trial court's authority to supervise the winding up under Section 11.054 was based on the voluntary decision to wind up the partnership. The Brothers did not need to plead and prove a cause of action they did not invoke.

Blake has not cited any authority to suggest that a trial court's order under Section 11.054 after a voluntary winding up must be subject to a summary-judgment standard of proof. The statute itself does not require the trial court to make any determinations, unlike Section 11.314, and does not require a summary-judgment proceeding. Rather, the statute gives the trial court broad discretion to supervise the partnership's winding up and "make any other order, direction, or inquiry that the circumstances may require." *Id.* § 11.054; *see also Tucker v. Bubak*, Nos. 13-18-00427-CV & 13-18-00613-CV, 2019 WL 2529674, at *6 (Tex. App.—Corpus Christi–Edinburg June 20, 2019, pet. denied) (mem. op.) (noting request for order under Section 11.054 was "not a ground for summary judgment" that needed to be set out in summary-judgment motion but rather was subject to "trial court['s] broad authority" under that statute). We may not impose our own judicial meaning on a statute by adding words not contained in the statute. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). Further, Blake has not challenged the substance of

24

the order itself on appeal; he has only argued that the trial court did not follow the proper procedure for issuing an order under Section 11.314, which the trial court did not do in this case, because the trial court issued the order regarding winding up under its supervisory authority under Section 11.054.

Blake also argues that Section 11.054 does not "serve as a judicial carte blanche" that allows the trial court to take action that is not expressly permitted elsewhere in the Business Organizations Code. *See Tucker*, 2019 WL 2529674, at *8 ("We do not believe § 11.054(3) was intended to serve as a judicial carte blanche that would allow a trial court unfettered authority to take actions—such as the rendition of an order requiring the involuntary termination of a corporation—that are not explicitly permitted elsewhere in the [Business Organizations C]ode."). Blake argues that, instead, a trial court's supervisory authority under Section 11.054 is conditioned on the court's determination that an event requiring winding up has already occurred. In this case, though, the Brothers presented affidavit testimony that an event requiring winding up had already occurred: they voluntarily voted to wind up the partnership. A voluntary decision to wind up the partnership is an event requiring winding up. TEX. BUS. ORGS. CODE § 11.051(2). Therefore Blake, by his own reasoning, has not shown that the trial court did not have supervisory authority under Section 11.054.

Blake has not shown that the trial court erred in issuing the supervisory order under Section 11.054. Blake's second point of error is overruled.

## CONCLUSION

We reverse the portion of the trial court's judgment awarding Blake attorney's fees against HFE in the amount of $272, 987 and remand this issue to the trial court for a redetermination of the amount of reasonable and necessary attorney's fees. We affirm the trial court's judgment in all other respects.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Hightower.