

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-21-00203-CV

IN THE INTEREST OF A.L.C. AND A.L.C., CHILDREN

On Appeal from the County Court at Law No. 1
Lubbock County, Texas
Trial Court No. 2019-535,459, Honorable Mark Hocker, Presiding

May 4, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, father of the two children involved herein, appeals from the trial court's final order through which it appointed appellee, maternal grandmother of the children, as the non-parent joint managing conservator and father as the parent joint managing conservator. Father contests the trial court's rulings through four issues. We affirm.

*Background*

Father, mother, and grandmother initially lived in Colorado. Father and mother had two children, one born in May 2017, and one born in June 2018. The couple had a tumultuous, on-and-off relationship for a period of years during which they sometimes lived together and sometimes did not. Mother moved to Lubbock, Texas, in late 2017

with her young child while pregnant with father's second child; grandmother permanently moved to Lubbock in 2018. While father did not move, he had limited contact with mother and grandmother. Much of it was of a threatening or aggressive nature.

Mother died in a car accident on May 6, 2019. Shortly thereafter, father, who continued to live in Colorado, filed a petition for writ of habeas corpus in Lubbock County to obtain the children. He alleged they were being illegally held by grandmother. The trial court denied the petition. We denied the ensuing petition for writ of mandamus wherein father sought to reverse the trial court's decision. *See In re E.S.*, No. 07-19-00323-CV, 2019 Tex. App. LEXIS 11228, at *1 (Tex. App.—Amarillo Dec. 30, 2019, orig. proceeding) (mem. op).

On May 20, 2019, grandmother filed the action underlying this appeal to gain conservatorship of the children. After a final hearing that spanned several days over the course of many months, the trial court found in favor of grandmother. Numerous findings of fact and conclusions of law were executed to support that decision.

### Issue One—Grandmother's Standing

Through his first issue, father questions grandmother's standing under section 102.004(a)(1) of the Texas Family Code. We overrule the issue.

Standing is a threshold issue in a child custody proceeding. *In re A.D.T.*, 588 S.W.3d 312, 316 (Tex. App.—Amarillo 2019, no pet.). Whether a party has it is a question of law that we review de novo. *Id.* And, the burden to show it rests with the person claiming it. *Id.*

Next, standing to pursue conservatorship of a child by a non-parent is accorded by statute. The one in play states as follows:

(a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that: (1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]

TEX. FAM. CODE ANN. § 102.004(a)(1). "Present circumstances" means those circumstances existing as of the date of suit requesting managing conservatorship. *In re T.H.*, 650 S.W.3d 224, 237 (Tex. App.—Fort Worth 2021, no pet.); *In re McDaniel*, 408 S.W.3d 389, 397 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding). This seems rather logical since the common meaning of "present" means "existing" or "occurring now." MERRIAM-WEBSTER COLLEGIATE DICTIONARY 982 (11th ed). And, those circumstances "existing" or "occurring now" must be of the type that "would impair" the child. In other words, there must be a nexus between the circumstances and injury. That nexus must be more than chance or hypothetical but rather possible or probable.[1] In other words, the evidence may not simply raise a suspicion or speculation of possible harm. *In re B.B.M.*, 291 S.W.3d 463, 467 (Tex. App.—Dallas 2009, pet denied). Rather, it must be of a sufficient quantum to support the logical inference that some specific, identifiable behavior or conduct will "probably harm the child." *Id. See also In re De La Pena*, 999 S.W.2d 521, 528 (Tex. App.—El Paso 1999, no pet.); *accord, In re L.W.*, No. 02-16-00091-CV, 2016 Tex. App. LEXIS 7782, at *6 (Tex. App.—Fort Worth July 21, 2016, no pet.) (mem. op.) (the same). Examples of such acts or conduct include severe neglect, abandonment, drug or alcohol abuse, or immoral behavior. *Id.*

---

[1] "[C]ould is used to talk about something that can happen, would is used to talk about something that ***will happen*** in an imagined situation and should is used to talk about something that ought to happen or must happen." BRITANNICA DICTIONARY: "How to Use 'Could,' 'Would' and 'Should'"(emphasis added).

With the foregoing in mind, we first turn to the present circumstances of the children. Again, grandmother petitioned for conservatorship over the children on May 20, 2019. Both children were under two years old at the time. Furthermore, their mother had died about fourteen days earlier. And, prior thereto, she and the children lived with her boyfriend in Lubbock. Though father was alive, he resided in Colorado and had no contact with his offspring for over a year. Indeed, one he had yet to meet. Nor had he financially supported either in a material way since their departure from Colorado. According to receipts admitted of record, he had sent approximately $250, and that was only during the year 2018. A Colorado court did eventually order him to pay actual support beginning in March 2019. Apparently, that obligation fell in arrears. Yet, father lived in a one-bedroom apartment in Colorado and had some means to pay monthly rent of over $1,600, despite having an unstable employment record. Also he regularly smoked marijuana.

Simply put, children under two cannot care for themselves. They lost their mother. And, their surviving biological parent all but abandoned them physically, emotionally, and financially. Those were the present circumstances when grandmother initiated her suit for conservatorship. Without a non-parent acting, one can reasonably infer that the children would have experienced significant physical and emotional impairment. So, grandmother satisfied the elements of section 102.004(a)(1).

### Issue Two—Sufficiency of the Evidence

Via his second issue, father contends that the evidence was legally and factually insufficient to appoint her as the non-parent joint managing conservator. We overrule the issue.

4

Section 153.131 of the Family Code requires the appointment of a parent as sole managing conservator. There is an exception, though. It arises when the appointment would significantly impair the child's physical health or emotional development. TEX. FAM. CODE ANN. § 153.131(a); *In re M.A.L.*, No. 07-19-00113-CV, 2019 Tex. App. LEXIS 10943, at *1 (Tex. App.—Amarillo Dec. 17, 2019, no pet.) (mem. op.). And, while it is presumed in Texas that a fit parent acts according to the best interest of the child, the presumption is rebuttable. *In re C.J.C.*, 603 S.W.3d 804, 806-808 (Tex. 2020).

Next, we review the trial court's determination of conservatorship under the standard of abused discretion. *In re M.F.M.*, No. 07-16-00117-CV, 2017 Tex. App. LEXIS 10710, at *2-3 (Tex. App.—Amarillo Nov. 14, 2017, no pet.) (mem. op.). Legal and factual sufficiency challenges are subsumed within that standard. *In re C.M.I.*, No. 07-21-00310-CV, 2022 Tex. App. LEXIS 9112, at *5-6 (Tex. App.—Amarillo Dec. 14, 2022, no pet.) (mem. op.). And, when addressing those types of argument, we determine 1) whether the trial court had sufficient information upon which to exercise its discretion and 2) whether it erred in applying that discretion. *Id.* The exercise of discretion also entails consideration of various factors enumerated in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976). They include the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interests of the children; the plans for the children by these individuals or by the agency seeking custody; the stability of the home or proposed placement; the acts or omissions of the parent which may indicate that the existing parent-

child relationship is not a proper one; and any excuse for the acts or omissions of the parent. *Id.* at 371-72. That said, we turn to the contention at hand.

As illustrated under issue one, evidence supports the decision to appoint grandmother as a managing conservator. Again, father all but abandoned his children between the time mother left Colorado in 2017 and died in 2019. To that we add evidence of father using improper and threatening language with grandmother and others, taking the children to undisclosed locations outside his visitation periods, levying false accusations to the Texas Department of Family and Protective Services about grandmother's conduct and care of the children, and using marijuana before or during in-person visits with the children. Other evidence indicated that uprooting from a known environment and placing them with someone with whom they had little contact would adversely affect them. While the latter may not alone warrant the appointment of a non-parent as a managing conservator, *In re M.F.M.*, 2017 Tex. App. LEXIS 10710, at *6, it may still factor into the overall equation. And, the sum of this evidence and its application to section 153.131 of the Family Code supports the trial court's decision to appoint grandmother a joint managing conservator.

### *Issue Three—Limitation of Father's Rights as a Parent Conservator*

In his third issue, father argues the trial court abused its discretion in limiting his rights as parent conservator in various ways. We overrule the issue.

Father first complains that the trial court erroneously bestowed upon grandmother the right to determine the children's primary residence. The Family Code requires the trial court to designate a conservator who has the exclusive right to determine the primary residence of the child. *See* TEX. FAM. CODE ANN. § 153.134(b). As grandmother points

6

out, public policy favors assuring "that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child" and "provide a safe, stable, and nonviolent environment for the child[.]" TEX. FAM. CODE ANN. § 153.001(a)(1), (2). *See also Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002).

Again, the record here contained evidence depicting father as having pursued a course of conduct akin to abandonment. The twenty-eight-year-old father having moved from his $1,600-a-month apartment to live with his own mother and multiple siblings in one abode suggests the lack of a stable home. The description of his involvement in the music or entertainment industry suggested a less than stable income as well. So too did the evidence depict him as aggressive, disrespectful, and/or hostile toward members of the children's family (in particular, grandmother). At one time father also alluded to having "mob" connections and threatened the children's uncle with harm if he impeded efforts to gain their possession. Other evidence revealed that he took the children to unsuitable locations, removed them from the state of Texas without telling grandmother, left them in a disheveled state, returned them to grandmother tired and hungry, and failed to abide by court orders. Furthermore, the older child lived in Lubbock since November 2017 and the younger, all her life. In turn, grandmother lived in Lubbock since 2018. While under her care, the children had seen medical providers and attended daycare. Their extended family also lives in Lubbock. On the other hand, father remained a Colorado resident and failed to fully utilize his court-approved visitation. So too had he failed to pay child support as prescribed by court order. If providing a safe, stable environment is the goal, then evidence supported the trial court's decision to select grandmother as the conservator

7

with authority to designate the children's primary residence. Evidence insulated this from attack as an example of abused discretion.

Father also asserts that the trial court erred in restricting his shorter periods of possession to Lubbock County. The final order includes a provision stating, "[a]ll periods of possession of [father] that involve periods of less than five (5) days are to occur in Lubbock, County, Texas, except by express written permission of [grandmother]." Such was not an abuse of discretion, upon consideration of the evidence. Once again, the trial court relied on the youthful age of the children, the distance of the parties, the lack of relationship between father and the children, the father's demonstrated "immaturity, bad judgment, lack of parenting skills, selfishness and dishonesty," the need for the children to develop an attachment to father while maintaining their attachment to grandmother as their main caretaker, and concerns that father would not adequately provide for the children's needs. Moreover, the prohibition from removing the children outside Lubbock County was not absolute. As father acknowledged in his brief, he could do so with grandmother's permission.

Father finally complains that the trial court abused its discretion when it denied him summer possession of the children prior to 2023. Aside from the conclusory nature of the argument, the matter became moot with the passage of time. The years before 2023 lapsed, and the Summer of 2023 is at our doorstep.

### *Issue Four—Attorney's Fees*

Lastly, father asserts the record lacks sufficient evidence to support the attorney's fees awarded grandmother. He argues that while there is "brief testimony of incurred attorney's fees, the record is entirely void of evidence of attorney's experience, total

8

amount of fees, and the reasonableness of such fees to support an award." However, as grandmother points out, sufficient evidence of the award is found in the supplemental reporter's record and exhibits that were requested by grandmother. Accordingly, we resolve this issue against father.

A party seeking attorney's fees "bears the burden of providing sufficient evidence" that the requested fees are both necessary and reasonable. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). *See also Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020) (stating that the party seeking attorney's fees has the burden of proof). The amount awarded by the trial court is subject to review under the standard of abused discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004). In reviewing whether discretion was abused, we note the applicability of the lodestar analysis. Under it, one begins the calculation by determining the reasonable hours worked multiplied by a reasonable hourly rate. *Rohrmoos Venture*, 578 S.W.3d at 501. Sufficient evidence of those includes, at a minimum, evidence of 1) the particular services performed, 2) who performed them, 3) when they were performed, 4) the reasonable amount of time required to perform them, and 5) the reasonable hourly rate of each person who performed them. *Id.* at 502. The result of the lodestar calculation is presumed to represent a reasonable and necessary attorney fee. *Id.*

The trial court awarded grandmother $16,683.50 in attorney's fees. As previously said, evidence appears in the supplemental reporter's record to support it. That evidence consists of grandmother's counsel testifying about her qualifications and those of her paralegal. So too did she provide evidence of the services performed, who performed them, when they were performed, the time necessary to perform them, and the

reasonable hourly rate for those services.  Segregation of recoverable from unrecoverable fees was also discussed by counsel.  Finally, counsel's exhibit supports that testimony.  Having considered this evidence, we find it sufficient under *Rohrmoos Venture* to support the fee awarded.[2]

Having overruled each of father's issues, we affirm the final order of the trial court.

Brian Quinn
Chief Justice

---

[2] The trial court actually awarded less than was indicated on the billing records and through testimony.